IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PENSION BENEFIT GUARANTY CORP.,

    Plaintiff,

v.                                           Civil Action No. 5:02CV161
                                                                               (STAMP)

BOURY, INC.,
BOURY BROTHERS MANAGEMENT
CONSULTANTS, INC.,
GMB OF WEST VIRGINIA, INC.
808 CORPORATION, a corporation,
and TJR, INC.,

    Defendants,

and

404 PARTNERS, LLC,

    Intervenor-Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING THE PLAINTIFF'S MOTION FOR A RULING
THAT THE PENSION BENEFIT GUARANTY CORPORATION
LOAN REMAINS ATTACHED TO THE WAREHOUSE PROPERTY;
CONFIRMING THE PRONOUNCED ORDER OF THE COURT
GRANTING 404 PARTNERS, LLC's MOTION TO INTERVENE;
FINDING THAT THE DEFENDANTS HAVE NOT BREACHED
THE TERMS OF THE SETTLEMENT AGREEMENT;
AND DENYING THE PLAINTIFF'S REQUEST
FOR ATTORNEYS' FEES AND COSTS**

I.   Facts and Procedural History

    Effective December 1, 1975, defendant Boury, Inc. adopted a retirement benefits plan ("the Plan") as defined under the Employment Retirement Income Security Act of 1974 ("ERISA"). On February 3, 1998, after it was determined that the Plan was underfunded, Boury, Inc. and the Pension Benefits Guaranty Corporation ("PBGC") entered into an agreement terminating the Plan, naming PBGC as the Plan's statutory trustee, and establishing

a Plan termination date of December 15, 1996.  PBGC then filed and perfected a lien ("the PBGC lien") against the personal and real property of the defendants on December 4, 2002 with the Secretary of State of West Virginia and the Clerk of County Commission of Ohio County, West Virginia.

On December 11, 2002, PBGC sued the defendants, Boury, Inc., Boury Brothers Management Consultants, Inc., GMB of West Virginia, Inc., 808 Corporation, and TJR, Inc.,[1] to collect statutory liabilities arising out of the termination of the Plan pursuant to 29 U.S.C. § 1362(a) and (b) and to enforce its statutory lien pursuant to 29 U.S.C. § 1368.  Thereafter, the parties reached a settlement agreement on the defendants' liability and filed a Stipulated Final Order and Judgment, which this Court entered on June 14, 2006.  Pursuant to the terms of that stipulated final order and judgment, the defendants were ordered to pay, jointly and severally, a sum of $143,400.00, plus post-judgment interest to begin accruing after sixty days from the entry of the order, and to cause defendant 808 Corporation to make its best efforts to consummate the sale of a certain property, namely a warehouse facility located at 2-16th Street, Wheeling, West Virginia, within sixty days from the date the order was entered to satisfy the amount of the judgment.

The sixty-day period ended on or about August 14, 2006.  The warehouse was not sold during that time.  On December 4, 2006, the

---

[1]TJR, Inc. has since been dismissed as a party to this action.

warehouse was sold in a "tax sale" under West Virginia law to an agent for 404 Partners, LLC ("404 Partners")[2] Mr. Edwards D. Gompers, at which time Mr. Gompers obtained the state's tax lien against the property. Subsequently, Angela D. Bruce, Deputy Commissioner of Delinquent and Nonentered Lands of Ohio County West Virginia, provided PBGC with a notice to redeem, sent by certified mail on January 29, 2007, and received by PBGC on February 1, 2007. On March 28, 2007, the tax sale of the warehouse was consummated when Mr. Gompers obtained title to the property and recorded the deed on March 30, 2007. On April 9, 2007, Mr. Gompers transferred title to the warehouse to 404 Partners by quitclaim deed.

On December 20, 2007, PBGC moved to reopen this case on the ground that the defendants had breached the settlement agreement by failing to use their best efforts to sell the warehouse. As relief, PBGC requested that the case be reopened to permit 404 Partners to be joined as an intervenor-defendant to the case, to enforce the judgment and the PBGC lien, and to collect post-judgment interest and costs and attorneys' fees.[3] The defendants and 404 Partners opposed the motion. This Court granted the motion

---

[2]At that time, 404 Partners was not a party to this case.

[3]29 U.S.C. § 1303(e)(5) states that "the court <u>may</u> award to the corporation all or a portion of the costs of litigation incurred by the corporation in connection with such action" (emphasis added). This Court believes that the awarding of attorneys' fees, which it interprets as "costs of litigation," is discretionary under the statute. In exercise of its discretion, this Court denies the plaintiff's request for attorneys' fees and costs.

3

to reopen the case and ordered the parties to brief the issue of whether the PBGC lien remains attached to the warehouse. PBGC filed its memorandum on September 15, 2008, which this Court construes as a motion for a ruling that the PBGC lien remains attached to the warehouse. Thereafter, 404 Partners, as an interested party, filed a motion to be added as an intervenor-defendant and also filed its response to PBGC's memorandum, to which PBGC replied.[4]

In its memorandum, PBGC argues that its lien was not extinguished by the tax sale and that it remains attached to the property. First, PBGC asserts that the lien has not been discharged under state law because state law is preempted by the ERISA provisions relevant to this action. Second, the PBGC lien against the property in question has not been discharged under the Internal Revenue Code at 26 U.S.C. § 7425, as the defendants claim, because the lien arises under the Labor Code at 29 U.S.C. § 1368, which provision does not incorporate the procedures for discharge of a lien under the tax code at 26 U.S.C. § 7425. PBGC argues further that even if 26 U.S.C. § 7425 does apply, the defendants

---

[4] In its motion to reopen, the plaintiff requested that 404 Partners be joined as an intervenor-defendant and 404 Partners, in response to the motion to reopen, considered themselves an indispensable party. This Court orally granted the plaintiff's motion at a status and scheduling conference on August 11, 2008. 404 Partners later filed a written motion on October 9, 2008. This Court now confirms the pronounced order of the court granting the motion to intervene as an intervenor-defendant, therefore, granting 404 Partners' October 9, 2008 motion. The caption of the case is hereby amended to reflect the addition of 404 Partners as an intervenor-defendant.

failed to comply with notice requirements of § 7425 regarding the sale of the property.

404 Partners filed a responsive memorandum contending that the lien was extinguished when the property was sold to it by a person who had purchased it in a tax sale. 404 Partners first states that the defendants did not breach the June 14, 2006 Stipulated Final Order and Judgment before proceeding to its argument that the PBGC lien to the subject property was extinguished by state tax law procedures. 404 Partners asserts that preemption is not implicated in this action because it is federal law that provides for state mechanisms to extinguish the PBGC lien. 404 Partners believes that the Internal Revenue Code appropriately applies to this case, that the state tax lien has priority over PBGC's statutory lien under the Internal Revenue Code as incorporated by ERISA, and that the PBGC lien was extinguished pursuant to the relevant Internal Revenue Code provision, the requirements of which were met by the defendants.

## II. Discussion

A. Whether State Law Provision Discharging Junior Liens Applies to this Action

Whether state law provisions discharging junior liens on real property sold in a tax sale applies to this action turns on whether ERISA incorporates a certain provision of the Internal Revenue Code, specifically 26 U.S.C. § 7425.

Under West Virginia law, a junior lien on real property is extinguished when a bona fide purchaser obtains the deed to the property through a tax sale and no other party redeems within the time set forth in the notice for redemption. See Rollyson v. Jordan, 518 S.E.2d 372, 381 (W. Va. 1999). PBGC contends that this provision of West Virginia law is inapplicable to its lien in this action because the lien arises under ERISA, 29 U.S.C. § 1368. As a federal statute, ERISA preempts state law. According to PBGC, ERISA, exclusively, governs the discharge of a PBGC lien. As support for this contention, PBGC relies upon 29 U.S.C. § 1368(b) and (e). Subsection (b) sets forth the conditions under which a PBGC lien terminates: "The lien imposed by [§ 1368] subsection (a) . . . continues until the liability imposed under section 4062, 4063, or 4064 [29 U.S.C. § 1362, § 1363, or § 1364] <u>is satisfied or becomes unenforceable by reason of lapse of time</u>." 29 U.S.C. § 1368(b) (emphasis added). Subsection (e) establishes the circumstances in which the PBGC may release or subordinate a lien arising under ERISA. Two such circumstances are set forth: (1) if PBGC determines that release of the lien or subordination of the lien to any other creditor of the liable person would not adversely affect the collection of the liability, or (2) if the amount realizable by PBGC from the property to which the lien attaches will ultimately be increased by such release or subordination. 29 U.S.C. § 1368(e). In PBGC's view, these provisions preempt the West Virginia law providing for extinguishment of junior liens by

the procurement of a deed by a bona fide purchaser through a tax sale.

In response, 404 Partners argues that the West Virginia statute cited above does apply because it has been incorporated by a separate federal statute governing federal liens--specifically, the provision of the Internal Revenue Code pertaining to the discharge of federal tax liens, 26 U.S.C. § 7425--which 404 Partners believes is implicated in this action. To reach this conclusion, 404 Partners relies on 29 U.S.C. § 1368(c), which governs the priority of liens arising under ERISA's provisions. That subsection states that "the priority of a lien imposed under subsection (a) shall be determined in the same manner as under section 6323 of the Internal Revenue Code of 1986 [26 U.S.C. § 6323] . . . ." 29 U.S.C. § 1368(c). Subsection (c) further provides:

> Such section 6323 shall be applied for purposes of this section by disregarding subsection (g)(4) and by substituting--
> (A) "lien imposed by section 4068 of the Employment Retirement Income Security Act of 1974 [29 U.S.C. § 1368]" for "lien imposed by section 6321" each place it appears in subsections (a), (b), (c)(1), (c)(4)(B), (d), (e), and (h)(5).

29 U.S.C. § 1368(c)(1)(A). When the required language is substituted as directed by 29 U.S.C. § 1368(c)(1)(A), the relevant portions of 26 U.S.C. § 6323, which governs the validity and priority of federal tax liens, provide:

> Even though notice of a lien imposed by section 4068 of the Employment Retirement Income Security Act of 1974 [29 U.S.C. § 1368] has been filed, such lien shall not be

7

> valid . . . [w]ith respect to real property as against a holder of a lien upon such property, if such lien is entitled under local law to priority over security interests in such property which are prior in time, and such lien secures payment of . . . a tax of general application levied by any taxing authority based upon the value of such property . . . .

26 U.S.C. § 6323(b)(6)(A).

In this action, the state of West Virginia had a tax lien on the property in question, and sold that lien at a public sale. An agent of defendant 808 Corporation purchased the tax lien, then obtained the deed and subsequently sold the property to intervenor-defendant 404 Partners. Because the PBGC lien is subject to § 1368, the West Virginia tax lien takes priority over the PBGC lien. According to 404 Partners, priority is co-extensive with discharge.

The provisions establishing priority, however, do not, in and of themselves, provide for extinguishment of a federal tax lien or a PBGC lien. Fox v. Moultrie, 666 S.E.2d 915, 919 (S.C. 2008). "[A]n ERISA claim is not synonymous with a federal tax claim under 29 U.S.C. § 1368(c)." In re Kent Plastics Corp., 183 B.R. 841, 846 (Bankr. S.D. Ind. 1995). The fact that tax claims and ERISA claims possess a common feature of liens sharing on par does not lead to the conclusion that the two claims are the same in every other respect. "It is certainly a leap of faith then to say that because one shares a single trait in common with the other, the two are identical. Applying this logic, one could say that a donkey is the same as an elephant simply because they both have four legs." In

re Divco Philadelphia Sales Corp., 64 B.R. 232, 235 (Bankr. E.D. Pa. 1986).

404 Partners asserts that the extinguishment of the PBGC lien is arrived at through another provision of the Internal Revenue Code. According to 404 Partners, ERISA's express incorporation of 26 U.S.C. § 6323 (the Internal Revenue Code section pertaining to the priority of federal tax liens) and its application of that section to PBGC liens contains an implied incorporation of 26 U.S.C. § 7425 (the tax code section relating to the discharge of federal tax liens) and application of that section to PBGC liens. The Internal Revenue Code section upon which 404 Partners bases its argument provides, in pertinent part:

> (b) Other sales. Notwithstanding subsection (a) [which governs the discharge of liens in judicial proceedings and judicial sales] a sale of property on which the United States has or claims a lien . . . under the provisions of this title, made pursuant to . . . a nonjudicial sale under a statutory lien on such property–
> (1) shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of the sale in the manner prescribed in subsection (c)(1); or
> (2) shall have the same effect with respect to discharge or divestment of such lien or such title of the United States, as may provided with respect to such matters by the local law of the place where such property is situated, if –
> > (A) notice of such lien or such title was not filed or recorded in the place provided by law for such filing more than 30 days before such sale,
> > (B) the law makes no provision for such filing, or
> > (C) notice of such sale is given in the manner prescribed in subsection (c)(1).

9

> (c) Special rules. (1) Notice of sale. Notice of a sale to which subsection (b) applies shall be given (in accordance with regulations prescribed by the Secretary) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary.

26 U.S.C. § 7425(b), (c)(1). 404 Partners contends that it provided PBGC with the required notice more than 25 days before the date of the sale, that PBGC failed to redeem, and that, therefore, the PBGC lien is extinguished.

However, 404 Partners cites no legal authority for the proposition that Congress intended to incorporate the discharge procedures of § 7425 into ERISA or otherwise to apply those procedures to a PBGC lien. Rather, 404 Partners appears to argue that § 7425 applies because the phrase "in the same manner as under section 6323 of the Internal Revenue Code" in 29 U.S.C. § 1368(c)(1) should be applied broadly.[5]

On the other hand, PBGC argues that Congress did not intend to incorporate § 7425 into ERISA and relies upon standard canons of statutory construction as support for its position. First, PBGC argues that the plain language of § 7425 suggests that Congress intended to limit the application of that provision to liens that arise under Title 26, that is, federal tax liens. Specifically,

---

[5] The one case cited by 404 Partners in support of this contention, In re Bayly Corp., 163 F.3d 1205, 1207 (10th Cir. 1998), is inapposite because it is a bankruptcy case construing § 1368(c)(2), which expressly provides that a lien imposed under Title 11 of the United States Code "shall be treated in the same manner as a tax due and owing to the United States under the Bankruptcy Code" 29 U.S.C. § 1368(c)(2). The provision at issue in this non-bankruptcy action is 29 U.S.C. § 1368(c)(1).

PBGC claims that the phrase "a sale of property on which the United States has or claims a lien . . . <u>under the provisions of this title</u>" in subsection (b) refers only to federal tax liens and therefore does not encompass liens arising under the Title 29 provisions of ERISA. 26 U.S.C. § 7425(b). Because the PBGC lien arises under Title 29, not Title 26, PBGC contends that § 7425 is not implicated in this action.

Second, as noted above, PBGC argues that Congress particularly described the provision of the Internal Revenue Code to be incorporated into ERISA and provided detailed substitutions of language necessary to make that provision consistent with ERISA's terminology. See 29 U.S.C. § 1368(c)(1). Those substitutions involve 26 U.S.C. § 6323 and certain other sections under Title 26, but they do not involve or relate to 26 U.S.C. § 7425. When Congress expressly enumerates which provisions and terms from another statute are to be incorporated, that which is not included is deemed to be excluded. See <u>United States v. Vonn</u>, 535 U.S. 55, 65 (2002) (noting the use of the interpretive canon <u>expressio unius est exclusio alterius</u> ("expressing one item of [an] associated group or series excludes another left unmentioned") as a guide to statutory construction). Moreover, § 6323, which is expressly incorporated into ERISA, does not make any cross-references to § 7425. Thus, PBGC contends, ERISA's express incorporation of 26 U.S.C. § 6323 does not contain an implied incorporation of 26 U.S.C. § 7425.

Third, PBGC argues that Congress intended to exclude any provision for the discharge of a lien arising under ERISA other than those set forth at 29 U.S.C. § 1368(b). (In fact, PBGC contends that ERISA does not provide for discharge at all, but rather establishes when such a lien becomes unenforceable and when PBGC may subordinate or release its liens.) According to PBGC, the explicit provision for the discharge of federal tax liens in 26 U.S.C. § 7425 indicates that Congress knows how to establish a statutory mechanism for the extinguishment of a statutory lien when it desires to do so and that the omission of a provision in 29 U.S.C. § 1368 for the discharge of liens arising under ERISA was intentional.

Fourth, pointing to provisions of the Internal Revenue Code involving the discharge of property, 26 U.S.C. § 6325(b), and the subordination of federal tax liens, 26 U.S.C. § 6325(d), PBGC argues that the differences between those provisions and their counterpart ERISA provisions at 29 U.S.C. § 1368(b) and (e) lead to two important conclusions: (1) the differences in the statutory language used in these provisions demonstrate that Congress intended PBGC liens to be treated differently from federal tax liens; and (2) the dissimilarities between the two sets of provisions indicate that Congress intended for the particular provisions of ERISA, not the Internal Revenue Code, to govern the discharge of a PBGC lien.

For the reasons stated above, this Court concludes that 26 U.S.C. § 7524 is not applicable to this case. Therefore, PBGC is correct that the state law provisions are preempted by ERISA. As a consequence of ERISA preemption, the PBGC lien was not extinguished by the tax sale and transfer of the property to 404 Partners and it continues as a lien junior to the state tax lien. Because this Court finds that 26 U.S.C. § 7425 is not applicable to this case, it need not address whether 404 Partners complied with the notice requirements set forth in the Treasury Regulations.

B. <u>Whether the Defendants Breached the Settlement Agreement</u>

As to the contention that PBGC raised in its motion to reopen, that the defendants breached the settlement agreement, PBGC has not set forth any factual allegations or evidence sufficient to show that the defendants failed to use their best efforts to effect the sale of the warehouse within sixty days of the enter of the stipulated final order and judgment. Based upon the limited allegations and proof presented to the Court, it cannot conclude that the defendants failed to use their best efforts to sell the property and, thereby, breached the settlement agreement. However, the money judgment of $143,400.00, entered on June 14, 2006 against defendants Boury, Inc., Boury Brothers Management Consultants, Inc., GMB of West Virginia, Inc., and 808 Corporation, plus post-judgment interest, has not been satisfied and remains in effect.

IV. Conclusion

For the reasons stated above, this Court GRANTS the plaintiff's motion for a ruling that the PBGC lien remains attached to the warehouse. This Court confirms its pronounced order of August 11, 2008 and GRANTS 404 Partners' motion to intervene as a defendant. In addition, this Court DENIES the plaintiff's request for attorneys' fees and costs. Finally, this Court finds that the defendants have not breached the terms of the settlement agreement. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter an amended judgment on this matter.

DATED: October 14, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE